# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JENNIE MCQUEEN,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:11-CV-1580-VEH |
| | ) |
| **WELLS FARGO HOME** | ) |
| **MORTGAGE, AEROTEK** | ) |
| | ) |
|     **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

This case was initiated on May 12, 2011, when McQueen, acting *pro se*, filed an Application under Section 706(f) of the Civil Rights Act and Motion for Leave To Proceed in Forma Pauperis. (Doc. 1). The Honorable L. Scott Coogler, USDJ, by Order (doc. 2) entered on May 16, 2011, granted McQueen's Motion, deemed McQueen's Application a complaint, and ordered that an amended Complaint be filed within 30 days. McQueen filed her Amended Complaint (doc. 3) through counsel on June 15, 2011. On July 18, 2011, the case was reassigned to the undersigned judge.

Now pending before the court is the Motion To Dismiss (the "Motion") (doc. 12) filed on September 16, 2011, by Defendant, Wells Fargo Home Mortgage ("Wells Fargo"). Wells Fargo also filed, on September 16, 2011, a brief (doc. 13) in support

of its Motion. The Plaintiff, Jennie McQueen ("McQueen") has opposed (doc. 18) the Motion. Wells Fargo has filed its reply (doc. 19). Therefore, the Motion is now under submission. The Motion is brought under FED. R. CIV. P. 12(b)(6) and seeks to dismiss all of McQueen's claims against Wells Fargo. Therefore, the court will address the standard for such motions, and then apply that standard to each of McQueen's claims.

## BACKGROUND

McQueen is African-American and was sixty-two years old at the time of her termination from employment. (Am. Compl., doc. 3, ¶ 5). McQueen has sued Wells Fargo and Aerotek, asserting claims of race and age discrimination in employment and of retaliation for her alleged protected activity of complaining about such discrimination (Am. Compl., doc. 3, *passim*). As to Wells Fargo, McQueen asserts termination based on race in violation of 42 U.S.C. § 2000e, as amended, 42 U.S.C. § 1981, and 42 U.S.C. § 1981a. (Am. Compl., doc. 3, ¶ 18).[1] She also asserts those claims under Title VII of the Civil Rights Act of 1964, as amended. (Am. Compl., doc. 3, ¶ 27). McQueen also asserts that Wells Fargo terminated her employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* and the Alabama Age Discrimination in Employment Act, Ala. Code §25-1-22 [sic] *et seq.* (Am. Compl.,

---

[1] Because Aerotek has not joined in the Motion, the court discusses only McQueen's claims against Wells Fargo.

doc. 3, ¶ 28).  Finally, McQueen claims that she engaged in protected conduct, specifically, "she complained of discrimination to Aerotek representatives," and that Wells Fargo thereafter retaliated against her.  (Am. Compl., doc. 3, ¶ 38).

## 12(b)(6) STANDARD

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint.  *See* FED. R. CIV. P. 12(b)(6).  The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* FED. R. CIV. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint.  *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47).  However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

3

assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. The court therefore "accept[s] as true the facts set forth in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). Thus,

> [a] district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth --- legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.

*Randall v. Scott*, 610 F.3d at 709 - 10.

## WELLS FARGO'S ATTACK BASED ON ALLEGED INSUFFICIENCY OF MCQUEEN'S CLAIMS THAT WELLS FARGO WAS HER EMPLOYER

As stated above, McQueen asserts against Wells Fargo claims of race and age discrimination in employment, specifically that she was terminated due to her race (African American) and age (62) and that she was terminated in retaliation for her complaints about race and age discrimination. Those claims are brought under 42 U.S.C. § 2000e, as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1981a, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, and the Alabama Age Discrimination in Employment Act.[2]

The crux of Wells Fargo's Motion, as to these claims, is that a necessary element of all of these claims is that Wells Fargo was McQueen's employer. Further, Wells Fargo argues that because McQueen did not allege that Wells Fargo was her employer, she has failed to plead a necessary element of these claims and they are therefore due to be dismissed. (Brief, doc. 13, pp. 5 - 6; Reply Brief, doc. 19, pp. 2 - 3, 5).

McQueen does not dispute that an employer-employee relationship is a necessary element of all of these claims. Rather, McQueen argues that she has adequately pled that "(1) Plaintiff worked for Wells Fargo ..." and that "she got a job

---

[2] Neither party has attempted to distinguish the elements of these various causes of action. Both have, however, at least implicitly admitted that an employer-employee relationship is a required element. Therefore, the court will address that issue and apply it to all of these claims.

with Wells Fargo through Aerotek," she "worked for Wells Fargo ... reviewing delinquent loans at Wells Fargo's facility," she "was assigned to [Wells Fargo's] Loss mitigation Department," she "reported to Tyler Mardis, a Wells Fargo manager," and "Wells Fargo controlled [her] work duties and supervised over [sic] her work." (Brief in Opp., doc. 18, pp. 3 - 4).  McQueen further states that "Wells Fargo made the decision to terminate [her]."  (Brief in Opp., doc. 18, p. 7).  McQueen also argues that she "was employed by both Aerotek and Wells Fargo as joint employers."  (Brief in Opp., doc. 18, p. 5) (asserting same facts).  Alternatively, McQueen requests "an opportunity to file a[] [Second] Amended Complaint."  (Brief in Opp., doc. 18, p. 9).

Wells Fargo responds that McQueen's allegations of employment by Wells Fargo are too "cryptic[]" and that her Amended Complaint and brief "make clear that she was not jointly employed — and she has not alleged facts sufficient to support this legal theory." (Reply Brief, doc. 19, p. 2).  Wells Fargo does not dispute that joint employers can be liable as to McQueen's claims, but states that its cases are "most on point"[3] and then argues that McQueen's case law is "inapplicable," although Wells Fargo agrees that the case law cited by McQueen does "state[] the general proposition

---

[3] However, Wells Fargo fails to point out to the court why those cases are most on point, which is especially troublesome to the court as Wells Fargo did not raise the issue of joint employer until its Reply Brief — probably because McQueen did not expressly plead it in her Amended Complaint.

that joint employer liability is allowed for Title VII and ADEA claims." (Reply Brief, doc. 19, p. 4). Wells Fargo then attempts to distinguish the cases cited by McQueen.

Finally, Wells Fargo argues that McQueen should not be allowed leave to amend because she has not "allege[d] any additional or new facts that would entitle her to relief" and therefore "the filing of a Second Amended Complaint would be futile." (Reply Brief, doc. 19, p. 5).

Therefore, the court now decides whether McQueen has alleged sufficient facts, as opposed to conclusory allegations, that Wells Fargo was her employer and/or her joint employer. Having examined the cases cited by McQueen, the court finds them to be directly apposite, and not, as Wells Fargo claims, "inapplicable." For example, the *Walden* case is virtually indistinguishable as to McQueen's fact allegations that would support a claim of joint employment by Wells Fargo. As the *Walden* court stated:

> The question here is whether VBNS was a joint employer of Ms. Walden. Although courts examine a number of factors (discussed infra) to answer that question, ultimately the joint employer test "concentrate[s] on the degree of control an entity has over the adverse employment decision on which the Title VII suit is based ." *Llampallas* [*v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998)]. A company is considered a joint employer where it contracts in good faith with another independent company and retains "for itself sufficient control of the terms and conditions of employment of the employee" employed by the other company. *Virgo* [*v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994)]. "Thus the joint employer concept recognizes that the

7

business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment." *Id*. The question of whether one company has sufficient control to be deemed a joint employer is ultimately a question of fact. *Id*.

In *Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico*, 929 F.2d 814 (1st Cir.1991), the court summarized various approaches taken to answer this factual question:

> The courts of appeals have emphasized a number of considerations relevant to the factual determination of whether an entity exercised sufficient control over employees to constitute a joint employer. The Seventh Circuit has noted the relevance of "such factors as the supervision of the employees' day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions." *G. Heileman Brewing Co., Inc. v. NLRB*, 879 F.2d 1526, 1531 (7th Cir.1989) quoting *W.W. Grainger, Inc. v. NLRB*, 860 F.2d 244, 247 (7th Cir.1988). The Fifth Circuit, in finding a company was a joint employer, noted: "[The company had] the right to approve employees, control the number of employees, have an employee removed, inspect and approve work, pass on changes in pay and overtime allowed. In practice [the company] exercised its control, though in varying degrees." *Ref-Chem Co. v. NLRB*, 418 F.2d 127, 129 (5th Cir.1969). *See also Clinton's Ditch Co-op Co., Inc., v. NLRB*, 778 F.2d 132, 138-39 (2d Cir.1985), *cert. denied*, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986) (emphasizing five factors: (1) hiring and firing; (2) discipline; (3) pay, insurance and records; (4) supervision; and (5) participation in the collective bargaining process)[.]

*Id*. at 820-21.

Under these standards, a disputed issue of material fact exists over

whether VBNS exercised sufficient control to be Ms. Walden's joint employer. Under the Agreement between COMSYS and VBNS, the parties contemplated that COMSYS would provide day-to-day management and supervision of the work performed by its personnel, including "determining in its reasonable discretion the time, scheduling, manner, method and place of performance of the Work." (Agreement, § 5. 1.A (filed under seal [60] ).) In reality, however, COMSYS did not supervise the work performed by Ms. Walden, VBNS did. (VBNS's Mem. at 8 ("her day-to-day work was supervised by VBNS personnel").) Moreover, COMSYS did not review the actual work performed by contractors like Ms. Walden at VBNS's facility and had none of its supervisors on-site at VBNS.

The Agreement also contains a representation and warranty from COMSYS to VBNS that the personnel COMSYS placed at VBNS would be independent contractors in relation to VBNS. (Agreement, § 5.1.B.) The Agreement further provided that COMSYS is responsible for all employee-related benefits for its personnel performing work at VBNS. ( Id. at § 5.1.C.) It is undisputed that COMSYS provided Ms. Walden with employee-related benefits; that she was subject to COMSYS's employment policies; that COMSYS kept a personnel file on her (which included tax forms, applications, signed acknowledgments, benefits information, emergency contact information, and any commendations); that Ms. Walden reported the hours she worked to COMSYS; and that COMSYS compensated Ms. Walden and made withholdings from her paychecks.

Nevertheless, VBNS selected Ms. Walden to be the contractor who worked at its site. If VBNS had not selected plaintiff for the Junior Project Manager position, then COMSYS would not have hired her. Although VBNS did not prepare performance reviews on Ms. Walden, its personnel had ultimate authority on whether she would continue to work as its contractor. Indeed, VBNS, not COMSYS, decided to discontinue Ms. Walden's assignment. VBNS also had the right to direct Ms. Walden's removal from its facility.

When considering the factors applied by controlling precedent in this

> Circuit, "[VBNS had] the right to approve employees, control the number of employees, have an employee removed, [and] inspect and approve work." *Ref-Chem Co.*, 418 F.2d at 129. Although VBNS contracted with an independent company (COMSYS), the aforementioned evidence suggests that it may have retained for itself sufficient control over the terms and conditions of Ms. Walden's employment to be deemed a joint employer. *Virgo*, 30 F.3d at 1360.

*Walden v. Verizon Business Network Services, Inc.*, No. 1:06-cv-2394-WSD-WEJ, 2008 WL 269619, at *13-14 (N.D.Ga. Jan. 29, 2008) (footnotes omitted).

Therefore, the Motion will be denied insofar as it seeks to dismiss all of McQueen's claims against Wells Fargo on the basis that McQueen has not adequately alleged facts to support a claim of joint employer liability. However, McQueen will be required to amend her Amended Complaint to specifically allege that legal claim.

### WELLS FARGO'S ATTACK BASED ON MCQUEEN'S FAILURE TO ALLEGE THAT SHE WOULD NOT HAVE BEEN TERMINATED "BUT FOR" HER AGE

Relying on *Gross v. FBL Financial Services, Inc.*, — U.S. —, 129 S. Ct. 2343 (2009), Wells Fargo alternatively argues as to McQueen's age discrimination claims that, because McQueen has alleged another basis (her race) for her termination, she cannot alternatively plead her age discrimination claims. The court rejects this argument as well <u>at this stage of the case</u>.

Specifically, the court finds that the Motion is premature with respect to its purported but-for causation defense and that disposing of McQueen's age

discrimination theory of liability with prejudice and without any significant development of the record would be contrary to Rule 8(d)(3), which permits a plaintiff to allege inconsistent claims.  *See* FED. R. CIV. P. 8(d)(3) ("Inconsistent Claims or Defenses.  A party may state as many separate claims or defenses as it has, regardless of consistency.").

However, McQueen will be ordered to replead her age discrimination claims in the alternative to her age and race discrimination claims so as to comply with *Gross*'s "but-for" causation standard.

## CONCLUSION

For the reasons stated above, the Motion is **DENIED**.  However, McQueen is hereby **ORDERED** to file a Second Amended Complaint, **no later than November 17, 2011**, in a manner that: (1) as to all her claims, specifically alleges joint employer liability; and (2) as to her age discrimination claims, complies with *Gross*'s "but-for" causation standard.

**DONE** and **ORDERED** this the 3rd day of November, 2011.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge