FILED
2013 Jun-28  PM 05:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JENNIE MCQUEEN,** )<br>)<br>**Plaintiff,** )<br>)<br>**v.** )<br>)<br>**WELLS FARGO HOME** )<br>**MORTGAGE, et al.,** )<br>)<br>**Defendants.** ) | **Case No.: 2:11-CV-1580-VEH** |

---

## MEMORANDUM OPINION AND ORDER

This is a race and age employment discrimination action brought by the plaintiff, Jennie McQueen, against the defendants, Wells Fargo Home Mortgage ("Wells Fargo") and Aerotek.  The complaint first alleges one count for race discrimination under both Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), and 42 U.S.C. § 1981.  (Doc. 25, pp. 3-5.)  The complaint also alleges one count of age discrimination in violation of both the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and the Alabama Age Discrimination in Employment Act, Ala. Code § 25-1-22, *et seq.* ("AADEA").  (Doc. 25, pp. 5-6.)  Finally, the complaint alleges retaliation in violation of 42 U.S.C. § 1981.  (Doc. 25, p. 5.)  All

counts arise out of the plaintiff's employment.

The case comes before the court on the motions for summary judgment filed by the defendants.  (Docs. 39 and 41.)  For the reasons stated herein, the motions will be **GRANTED**.

## I.   STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted).  The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must

designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce

3

"significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

4

## II.    FACTS[1]

### A.    The Plaintiff's Employment With Aerotek

Aerotek provides technical, professional, and industrial recruiting and staffing services.  The company recruits, hires, and assigns temporary employees to work for various lengths of time on the premises of, and under the direction and supervision of, its clients.  The business needs of Aerotek's clients determine the job duties and duration of the assignment for the employees assigned to work for that client.  The plaintiff, Jennie McQueen, was experienced with such companies and their procedures.  She worked for several different temporary employment agencies prior to Aerotek.  Every assignment she was given through these agencies was a temporary placement ending at the client's discretion.

McQueen first contacted Aerotek in May 2009.  On February 19, 2010, the plaintiff signed an employment agreement with Aerotek and acknowledged her receipt of Aerotek's Contract Employee Handbook, which contains Aerotek's written

---

[1] The court has synthesized the facts of both motions for summary judgment into this one opinion.  To the extent that either defendant has submitted a fact to the court, and that fact was not disputed by the plaintiff, it has been adopted without citation to the record.  Facts which were submitted by either defendant, and disputed with proper support in the record, have been resolved, as the court must, in the light most favorable to the non-movant, and a citation to the record evidence has been included.  Some facts offered by the plaintiff in response to the motions were admitted by one defendant and disputed by the other.  In those cases, the court resolved the fact in the light most favorable to the plaintiff if the plaintiff properly supported the fact with evidence in the record.   The court cites to the record as to those facts as well.

policies against discrimination and retaliation.  For all work placements, the plaintiff submitted her work time to Aerotek and was paid by Aerotek. An Aerotek representative handled all employee questions and issues, and the plaintiff knew to contact Aerotek with any such questions.

### B.    The Plaintiff's Work With Wells Fargo

In March 2010, Aerotek offered, and the plaintiff accepted, a placement as a "Decisioner" in Wells Fargo's Loss Mitigation Department.[2] (Doc. 42-1, pp. 15 (59-60), 19 (74), 44 (173).)  Aerotek recruiters Nathan Warner and Emily Ann Dean were responsible for the plaintiff's placement at Wells Fargo and handled employment-related complaints from her and any other Aerotek employee.

The plaintiff signed a separate employment agreement with regards to this assignment which states that "AEROTEK . . . conditionally offers to employ Jennie McQueen in the capacity of Decisioner commencing on March 8, 2010 at its client, Wells Fargo . . . for services with the latter for a temporary period." (Doc. 42-1, p. 58).  The agreement also states:

> 1. **Ratification**. You understand and acknowledge that this offer of temporary employment with AEROTEK is subject to final approval by

---

[2]This was not the first time the plaintiff had been placed with Wells Fargo.  In 2009, the plaintiff worked for Staffmark, another employer in the business of placing workers in temporary positions.  During her employment with Staffmark, the plaintiff was also assigned to work at Wells Fargo, on a temporary basis, performing work involving mortgages.  That assignment ended after six weeks.

the Client and that you shall not be entitled to any wages or employment unless actually hired by AEROTEK to work the specific assignment pursuant to this agreement.

(Doc. 42-1, p. 58.)  The agreement states that Aerotek is dependent on the client to approve the number of hours worked before McQueen could be paid.  It also states: "Consequently, you also understand that and agree that subject to applicable law, your pay check may not be released unless client approves and verified time records have reached Aerotek's offices."  (Doc. 42-1, p. 58.)  The agreement also allowed Wells Fargo to end McQueen's employment, stating: "Termination. You understand that the length of the assignment is subject to the discretion and needs of the client." (Doc. 42-1, p. 59.)  In her deposition, the plaintiff acknowledged that the assignment was for a temporary period, but stated that Warner told her that the job should last at least two years.  (Doc. 42-1, p. 18 (70).)

The plaintiff was placed in the "Loss Mitigation Department" of Wells Fargo. That department was divided into 12 teams, with each team consisting of employees classified as "Decisioners," "Communicators," and "File Clerks." Each team's job was to take Wells Fargo customers who had fallen behind on their mortgage payments and place them into one of Wells Fargo's payment programs.

The plaintiff's job as a Decisioner was to determine into which Wells Fargo's payment program, if any, the customer could be placed.  Once a Decisioner made a

recommendation, the customer's file was sent to second-level review where the Decisioner's recommendation was either approved or rejected.  Pursuant to Wells Fargo policy, Decisioners are prohibited from placing a client in the program if their recommendation is denied by second-level review.  If second-level review disagreed with a Decisioner's recommendation, the Decisioner had to make only the changes second-level review requests, and then either close the file or gather additional information and re-evaluate based on the new information.

The plaintiff was paid $22.00 per hour by Aerotek during her temporary assignment at Wells Fargo.  The amount of files the plaintiff reviewed had no impact on her pay; in fact, the plaintiff did not receive any bonus or other incentive based on performance or productivity. The plaintiff testified that Decisioners had a certain number of files that they were supposed to review in any given day, which she called a quota.  (Doc. 42-1, p. 47(185-186).)  The plaintiff's team goal was to review 10 files per day.  (Doc. 42-1, p. 47(186).)

Wells Fargo provided the supplies for McQueen to do her job.  Wells Fargo communicated employment-related matters, including work schedules and hours of work relating to McQueen, directly to Aerotek.  (Doc. 47-1, p. 18.)  All of the plaintiff's work took place on Wells Fargo property.

The plaintiff's assigned team included another Decisioner named Deidre Strain,

who is white and 50 years old.  Strain was not employed by Aerotek.[3]  Shortly before the plaintiff's assignment was terminated, Corintha Washington, an African-American woman, was also placed at Wells Fargo as a Decisioner on the plaintiff's team.  (Doc. 42-1, p. 20(79).)  The parties have not stated by whom Ms. Washington was employed.  The team also had two File Clerks and three Communicators.  The parties have not stated who employed these individuals.

The plaintiff admits that she made some mistakes while she worked with Wells Fargo, but that her mistakes "[were] not any worse than anybody else."  (Doc. 77, p. 20(77).)[4]  She also states that she "might have got[ten] one or two loans behind every now and then, but I quickly caught up."  (Doc. 42-1, p. 23(90).)

### C.    Alleged Discrimination Against the Plaintiff

The plaintiff's team supervisor at Wells Fargo was Lending Manager Tyler Mardis.  Although he became a Wells Fargo employee in September of 2010, at the time that the plaintiff worked under him he was an employee of another staffing company which had assigned him to work at Wells Fargo.  (Doc. 42-5, p. 1.)  Mardis

---

[3]Wells Fargo admits that it eventually hired Strain, who is currently employed by Wells Fargo.  (Doc. 42-6, p. 1; doc. 50, p. 4.)

[4]The defendants contend that the plaintiff "regularly" made mistakes.  However, the evidence they cited does not support this assertion.

reported to Senior Manager Maggie Ignace, also an employee of a staffing company,[5] who was also temporarily assigned to work at Wells Fargo. Mardis stated in his declaration that, from time to time, he "was required to counsel and correct the work of all team members, including . . . McQueen and . . . Strain. In addition, [he] worked with other Decisioners on other teams when help was needed or another manager was out." (Doc. 42-5, p. 4.)

The plaintiff's complaints of race and age discrimination are based solely on the alleged conduct of Mardis, and her ultimate termination. Regarding Mardis's conduct, the plaintiff testified:

> Well, you know, let me put it this way. Everybody was – this was a completely new project for Wells Fargo and trying to help these clients in this particular program. So everybody was new and everybody was learning, including Tyler Mardis. And he– I mean, he didn't know everything even though I'm sure he had more training than I, because he had been there longer than I. But you know, when I made, I'm not saying I didn't make any mistake. I did, you know. But my mistake was not any worse than anybody else. But he always made it seem like it was. And he would loudly announce every time I made one, whereas the other decisioner he would not tell anybody about her mistakes. He would not tell anybody about her mistakes. He would tell her privately when– because she and I would work during lunch hours because there was so much he wanted us to do. And so he would wait until lunch when all the other people were going gone [sic] to lunch to tell her about her mistakes. Or he would wait to – what is it – like, when we worked from 5 o'clock to 6 o'clock or whatever we was working, she and I would be

[5]The name of the staffing company was not specified by the parties. However, they were clear that it is a different company from the one for which Mardis worked.

> the only ones in there and he would sometimes be in there, too. Then he would tell her about her mistakes.  He would never tell her about her mistakes in front of anybody else.

(Doc. 42-1, p. 20 (77-78).)  The plaintiff admits, however, that she did not witness every conversation between Mardis and Strain.

Mardis would tell the plaintiff "something like, you better get the production up." (Doc. 42-1, p. 50 (197).)  The plaintiff testified that Mardis counseled her "one time" because she did not keep her Wells Fargo email open, which was the way supervisors communicated with her about her work.[6]  (Doc. 42-1, p. 49(194).)  On one occasion in early May 2010, Mardis publicly counseled her about her job productivity, embarrassing her in front of other employees.  Mardis told other employees that she was behind in her work, spoke to the plaintiff in a condescending manner, and would "act like [she] was retarded" if the plaintiff asked any questions. On other occasions, Mardis ignored the plaintiff or told her she was not performing her job correctly.  The plaintiff also alleges that Mardis took some of the files to which she had been assigned and redistributed them to Strain, "to help her out on her production so she would look good." (Doc. 42-1, pp. 22(88), 26(101).)  The plaintiff admits that Strain did not get any type of commission or benefit other than "looking

---

[6]Wells Fargo's proffered fact implied that this occurred regularly.  The plaintiff states that it happened only once.  Mardis's declaration states that he did this "at least one time." (Doc. 42-5, p. 4.)

good" as a result of being assigned additional files.  (Doc. 42-1, p. 26(102).)

Neither Mardis nor Ignace ever made any derogatory comments to the plaintiff about her race or her age.  Mardis once commented that the plaintiff was "pretty old" after the plaintiff told Mardis that she "had thirty years on [him]," but the plaintiff did not interpret this comment as derogatory because it was made as a joke in the context of a discussion about birthdays.  (Doc. 42-1, p. 25(100).)  No one at Aerotek ever made any derogatory comments to the plaintiff about her age or her race.

### D.    The Plaintiff's Complaints to Aerotek About Discrimination

The plaintiff's first complaint of discrimination was to Dean in April of 2010. She told Dean that she thought Mardis was "always on my back and . . . I felt like he was using my age and my race against me by the things he was doing." (Doc. 42-1, p. 23(92).)  McQueen also asked Dean "if there was anything she could do about it." (Doc. 42-1, p. 23(92).)  Dean said she would discuss it with Warner.  (Doc. 42-1, p. 24(93).)  McQueen discussed this issue with Dean on more than once occasion.

McQueen then "followed up" with someone she describes as "another girl" at Aerotek whose name she could not remember.  (Doc. 42-1, p. 24(94).)  In regards to this conversation, the plaintiff testified: "I was just asking her if she know that [sic] [Dean] had followed up on it, and she said that she was sure that she had.  And she would, you know, mention it to her."    (Doc. 42-1, p. 24(94).)  Specifically, the

plaintiff says that she told this other person: "I said I – I had a complaint against Wells Fargo, and I wanted to know if she had told [Warner], because I don't think [Warner] was back at the time. And she said that she would ask [Dean] when she got back to the office." (Doc. 42-1, p. 24(93-94).)

About one week before the plaintiff was terminated, Warner contacted the plaintiff by phone to discuss a paycheck issue. The plaintiff mentioned her complaint to him at that time. Specifically, she told Warner she felt she had been discriminated against because of her age and race, but she did not give him any additional details. In her deposition, the plaintiff was asked if she specifically mentioned the word "discrimination" in this conversation, to which she replied: "Yeah. I– I mean, I told him that I – my assessment was that I had been – being discriminated against because of my age and my color. That was my assessment. And so that is what I told him." (Doc. 42-1, p. 25(97-98).)

Neither Dean nor Warner recalls any complaint of discrimination by the plaintiff. Warner states that had he received a complaint of discrimination he would have reported it to Aerotek's legal team and to its Customer Service Supervisor. Additionally, Warner says that he would have asked the plaintiff to write a statement or an e-mail and he would have made a notation in the plaintiff's file.

The plaintiff does not know whether anyone at Wells Fargo had any knowledge

of her alleged complaints to Dean and Warner.  The plaintiff admits that neither Dean nor Warner reported any such complaint to Wells Fargo.  (Doc. 40, p. 14; doc. 46, p. 3.)  She also admits that Aerotek did not inform anyone at Wells Fargo about her complaint.  (Doc. 43, p. 11; doc. 46, p. 4.)

Aerotek recruiters maintained activities logs to keep track of Aerotek employees at various placements.  These logs track conversations, telephone calls, and other communications between Aerotek recruiters and account managers and employees.  The activities log that Aerotek recruiters maintained for the plaintiff in 2010 contains no notation regarding any complaint of discrimination.

According to Dean, if she had received a complaint of discrimination, she would have contacted Aerotek's upper management to report the issue and find out what additional steps to take.  Mardis never received a complaint from anyone that the plaintiff believed she was being discriminated against, and he is not aware of anyone at Wells Fargo receiving any alleged complaint from anyone that the plaintiff believed she was being discriminated against.

### E.    The Plaintiff's Termination

In May 2010, a recommendation made by the plaintiff was denied by second level review and the file was returned to her.  Thereafter, the plaintiff made a change to the file, in what she says was an effort to correct a mistake she made on the file.

She stated in her deposition that when the file went to second-level review, they disagreed with her original decision and sent it back to her with changes to the plan. (Doc. 42-1, pp. 53 (209-210), 57(226).)  She states that she mistakenly thought that they had approved her initial plan and so made no changes to the document.  (Doc. 42-1, p. 57(226).)  When her mistake was pointed out to her by Mardis, she then made the requested change.   (Doc. 42-1, p. 57(226-227); doc. 47-1, p. 5.)   In her declaration, the plaintiff states that she "fixed part of the file but did not correct the template. . . . Weeks noted that I did not correct the template, the final step.  After pointing out my mistake, she assisted me with correcting [the] template (which is what I had been instructed to do[.])" (Doc. 47-1, p. 5.)

Wells Fargo became aware of the plaintiff's alteration of the file and determined that her assignment should be terminated.  In Warner's declaration, he states: "Someone at Wells Fargo contacted Aerotek to request that Ms. McQueen be removed from her assignment at Wells Fargo because she had falsified loan documents, had low productivity, and failed to follow instructions." (Doc. 42-2, p. 3.)  Neither Warner nor Dean had any input into Wells Fargo's decision to terminate the plaintiff's assignment.

Warner met with the plaintiff to inform her that her assignment was terminated.  Specifically, Warner informed the plaintiff that Wells Fargo was letting her go

because she had committed fraud with regard to the file she had altered.  At that meeting, the plaintiff denied that she had committed fraud. She also asked Warner if he had spoken to Wells Fargo about her complaints of discrimination, but he did not want to discuss it.  (Doc. 42-1, p. 29(116).)

Thereafter, the plaintiff attempted to apply for unemployment compensation. (Doc. 47-1, p. 11.)  In a response to the Alabama Department of Industrial Relations request for information, provided by an agent of Aerotek, Aerotek stated that the plaintiff "was discharged for misconduct related to performance.  The claimant made a mistake and instead of asking how to fix the mistake she tried to do it herself which involved forging a mortgage document." (Doc. 47-1, p. 11.)  Aerotek records include a performance note received from Wells Fargo which reads:

> Subject: Official Performance Note
>
> Comments: The associate was caught trying to falsify her information. She made a mistake and instead of asking how to fix it she tried to do it herself, which has put us in the situation that we have a mortgagor on a plan that wasn't approved by second level review. With other issues she has had with following instruction, checking email and productivity, I think it is in our best interest to let the employee go.

(Doc. 42-2 p. 6.)  Wells Fargo admits that it "informed Aerotek not to assign McQueen to work at the Wells Fargo facility located in Homewood, Alabama." (Doc. 47-1, p. 19.)

The plaintiff never spoke to anyone at Wells Fargo about the file or the basis for the termination of her assignment at Wells Fargo. She does not know who at Wells Fargo made the decision to terminate her assignment, but she assumes that it was Mardis and Ignace.

The plaintiff claims that, following the termination of her assignment at Wells Fargo, she contacted Warner about additional placements, but was not assigned to another position because she was "blackballed." Warner recalls that, during that time, there were very few other available positions for Aerotek employees aside from those available at Wells Fargo. In his declaration, Warner states that he "would not have precluded . . . McQueen from being given another assignment and would have worked to place her with a different company had she expressed interest in another placement and had there been another available position for which she was qualified." (Doc. 42-2, p. 3.)[7] The plaintiff believes that Warner felt he was precluded from giving her another assignment, but she does not know whether he was responsible for

---

[7]The plaintiff disputes this fact, writing that "Aerotek representatives were upset that McQueen contacted Wells Fargo about her termination." (Doc. 46, p. 3.) In support, she cites the defendants' joint evidentiary submission, doc. 42-1, but the cite is incomplete, lacking a page number. The court's summary judgment scheduling order, referenced in the general scheduling order in this case, requires that statements of fact that are disputed "must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based." Further, the defendants' joint evidentiary submission is eighty pages long, of which fifty-seven pages are the plaintiff's deposition, printed with 4 deposition pages per transcript page. As the plaintiff has not given a specific page number, the court accordingly accepts the defendant's statement as to this fact.

placing employees anywhere other than Wells Fargo, and she did not speak with anyone else about another placement.

The plaintiff does not know anyone else who had "performance issues" and was not terminated. (*Id.* at 121:3-7.)   Likewise, Mardis is unaware of any other Decisioner who "made the same mistake . . . McQueen made and was not released from their assignment." (Doc. 42-5, p. 6.)

## III.   ANALYSIS

### A.   Aerotek's Motion for Summary Judgment

In Count One, the complaint alleges that "Aerotek discriminated against McQueen because of her race with respect to the termination in violation of . . . 42 U.S.C. § 1981, and 42 U.S.C. § 1981a."[8] (Doc. 25, p. 4.)   In Count Two, the complaint states that Aerotek discriminated against McQueen because of her age in violation of only the AADEA. (Doc. 25, p. 5.)[9]   In Count Three, the complaint alleges that Aerotek "retaliated against McQueen in violation of 42 U.S.C. § 1981." (Doc. 25, p. 6.) Aerotek moves for judgment of dismissal as to all three counts. Each count will be addressed in turn.

---

[8]Title 42 U.S.C. § 1981a merely provides the range of monetary and other relief available under Title VII.  It does not create a separate cause of action.  The complaint alleges no Title VII claim against Aerotek.

[9]No ADEA claim is made against Aerotek.

## 1.   *Age Discrimination Claim*

Aerotek first argues that the plaintiff's claim against it under the AADEA is barred by the statute of limitations.  (Doc. 40, p. 16.)  In her response brief, the plaintiff acknowledges that this claim is due to be dismissed as against Aerotek. (Doc. 46, p. 24, n. 5.)  Accordingly, this count will be dismissed.

## 2.   *Race Discrimination Claim*

Aerotek argues that it is entitled to summary judgment on the plaintiff's section 1981 disparate treatment claim.[10]  The Eleventh Circuit has explained:

---

[10]Aerotek and Wells Fargo both argue that the plaintiff *might* be making a hostile work environment claim as well.  (Doc. 40, pp. 18, 22-23.)  Aerotek states: "While her Second Amended Complaint does not assert a cause of action for racially hostile work environment, [the] [p]laintiff apparently asserts in her deposition that she was subjected to a racially hostile work environment as a result of Mardis'[s] conduct."  (Doc. 40, p. 18.)  The plaintiff's response to the motion for summary judgment contains no argument regarding hostile work environment.  In light of that fact, and the fact that the complaint makes no such claim, the court will not address those issues.  *See, Burgin v. Burlington Coat Factory*, No. 2:11-CV-753-JHH, 2013 WL 2444038 *11 (N.D. Ala. June 4, 2013) (holding that claims not made in the complaint "[are] not properly before the court" so that any argument concerning them is irrelevant).  *See also, Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller International, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001); *cf. McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a

Title VII prohibits employers from discriminating against any individual with respect to the terms of employment on the basis of race or sex. 42 U.S.C. § 2000e-2(a)(1). Section 1981 also prohibits discrimination in the making and enforcing of contracts based on a person's race. 42 U.S.C. § 1981(a). . . . The same analysis applies to claims for employment discrimination brought under Title VII as to those brought under § 1981.

*Phillips v. Aaron Rents, Inc.*, 262 Fed. Appx. 202, 207 (11th Cir. 2008).[11]   The

Eleventh Circuit has recently explained:

A plaintiff may establish a Title VII claim through (1) direct evidence of discrimination, or (2) circumstantial evidence that creates an inference of discrimination. *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1103 (11th Cir.2001). We use the framework established in *McDonnell Douglas Corp. v. Green,* 411 U .S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), to evaluate Title VII claims that are based on circumstantial evidence of discrimination. *See Holifield v. Reno,* 115 F.3d 1555, 1561–62 (11th Cir.1997).

Under that framework, a plaintiff first must establish a *prima facie* case of discrimination based on disparate treatment. *Id.* at 1562. A plaintiff establishes a *prima facie* case of disparate treatment

_____

ground for summary judgment"). Relatedly, the court is under no independent obligation to develop grounds in opposition to summary judgment on behalf of any party as "the onus is upon the parties to formulate arguments[.]" *Dunmar*, 43 F.3d at 599 (citation omitted); *see also id.* ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted)).

Further, even if the court were to find that such a claim had been made, the parties have cited no evidence of harassment based upon race. Accordingly, a hostile work environment claim, had it been made, would also fail on the merits. *See Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir.2009) (setting out *prima facie* elements).

[11]"Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

discrimination under Title VII by showing: "(1) [ ]he is a member of a group protected by Title VII; (2)[ ]he was qualified for the position or benefit sought; (3)[ ]he suffered an adverse effect on h[is] employment; and (4)[ ]he suffered from a differential application of work or disciplinary rules." *Spivey v. Beverly Enters.*, 196 F.3d 1309, 1312 (11th Cir.1999). If the plaintiff successfully establishes a *prima facie* case, the burden shifts to the defendant/employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Holifield,* 115 F.3d at 1564. If the defendant articulates a legitimate, non-discriminatory reason, the presumption of discrimination is eliminated and the plaintiff must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were pretextual. *Id.* at 1565.

*Dominguez v. Lake Como Club*, No. 12-12994, 2013 WL 2435035 *2, — F. 3d —

(11th Cir. June 5, 2013).

Aerotek argues first that the plaintiff cannot make out a *prima facie* case of disparate treatment race discrimination because "she cannot establish that the behavior about which she complains amounted to an adverse employment action or that similarly situated Caucasian employees were treated more favorably than she." (Doc. 40, p. 19.)  Next it contends that, even if the plaintiff can make out a *prima facie* case of discrimination, she cannot show that its proffered non-discriminatory reason was a mere pretext for discrimination.[12]

---

[12]The pretext argument is actually made in the section of Aerotek's brief discussing the retaliation count.  Since the reason and standard are the same for the disparate treatment count, the court will address it in this discussion as if it were made as to this count.

### a.   Consideration of Conduct Other Than The Termination

The court must first address an important issue not raised by the parties.  As to the race discrimination claim, the parties' briefs focus on some conduct which is not alleged in the complaint.  The complaint seems to state that the race discrimination claims are based on the plaintiff's termination *only*.  (Doc. 25, pp. 3-4.)  It states: "The Defendant Wells Fargo discriminated against McQueen because of her race with respect to the termination;" and "The Defendant Aerotek discriminated against McQueen because of her race with respect to the termination."  (Doc. 25, pp. 3-4.) The only other factual allegation in this count states vaguely that "McQueen was held to a different standard of employment than the similarly situated white employee for the production of files by . . . Tyler Mardis."  (Doc. 25, p. 4.)  This last statement "epitomizes speculation and therefore does not amount to a short and plain statement of [the plaintiff's] claim under Rule 8(a)."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (alteration supplied) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) and Fed. R. Civ. P. 8(a) in the summary judgment context).

The Eleventh Circuit has upheld the practice of summarily dismissing claims based upon conduct not specifically set out in the complaint.  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 973 (11th Cir. 2008) (judgment affirmed where

district court wrote: "[t]o the extent plaintiffs seek to include additional [hiring] decisions not identified in the complaint, those additional claims are not properly brought in this action").  This court finds that, in this case, allegations of racially discriminatory acts other than the termination, namely Mardis's conduct, are not properly before the court.  Even if they were, as shown below, summary judgment is still appropriate as to these acts.

### b.    Prima Facie Case

### (1)    Adverse Employment Action

The parties agree that the plaintiff's complaints of race and age discrimination are based on: (1) the plaintiff's termination; and (2) the alleged conduct of Mardis while the plaintiff worked with Wells Fargo.

### (a)    The Termination

Clearly, termination is an adverse employment action, as it is an "ultimate employment decision." *Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008). However, in a footnote, Aerotek writes: "arguably, even the termination of [the] [p]laintiff's assignment does not amount to an adverse employment action as to Aerotek because *Wells Fargo* made the decision to terminate her assignment." (Doc. 40, pp. 20-21, n. 9) (emphasis added).  It does not elaborate upon this argument, and the plaintiff does not respond to it.  However, the court sees this as an important and,

indeed, dispositive point.

Only the plaintiff's "employer" may be held liable under Title VII for alleged discrimination against her.   42 U.S.C.A. § 2000e-2 ("It shall be an unlawful employment practice for an 'employer' . . . to discriminate against any individual.") The complaint alleges that Aerotek and Wells Fargo were "joint employers" of the plaintiff for purposes of Title VII.  (Doc. 25, p. 4.)

The Eleventh Circuit has held that the basis for finding a joint employer relationship is "'simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994) *quoting National Labor Relations Board v. Browning-Ferris Industries*, 691 F.2d 1117, 1122 (3d Cir.1982)).  Aerotek does not argue that it was not the plaintiff's employer. However, the Eleventh Circuit, citing to *Virgo*, has said that, when discrimination is based on an adverse employment decision, the joint employer theory "concentrate[s] on the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998).

In *Llampallas*, Palmetto was a non-profit entity "formed to operate, manage,

and administer a commercial condominium with seven units in Hialeah, Florida."

*Llampallas*, 163 F.3d at 1240.  Of the seven units in the condominium that Palmetto

managed, six were owned by a company called Scientific Components Corporation.

*Id.*  Scientific Components Corporation was the parent company of an entity known

as Mini-Circuits.  *Id.*  The plaintiff, Llampallas, was fired from her position as

production supervisor at Mini-Circuits. *Id.* at 1244.  In determining whether Palmetto

could be liable for alleged discrimination concerning the firing, the Eleventh Circuit

wrote:

> Regardless of whether we address Palmetto's status under the "single
> employer" theory of jurisdiction, *see McKenzie,* 834 F.2d at 933 n. 3
> (adopting the *Radio and Television* test for Title VII purposes), or a
> "joint employer" theory of liability, *see Virgo v. Riviera Beach Assocs.,*
> *Ltd.,* 30 F.3d 1350, 1359-61 (11th Cir.1994), Palmetto cannot be held
> liable under Title VII for firing Llampallas from her position as
> Production Supervisor at Mini-Circuits. Both theories concentrate on the
> degree of control an entity has over the adverse employment decision on
> which the Title VII suit is based. *See, e.g., Fike v. Gold Kist, Inc.,* 514
> F.Supp. 722, 725-26 (N.D.Ala.1981), *aff'd* 664 F.2d 295 (11th Cir.1981)
> (single employer); *Swallows v. Barnes & Noble Book Stores, Inc.,* 128
> F.3d 990, 993 n. 4 (6th Cir.1997) (explaining the differences between
> the joint employer theory and the single employer theory); *Schweitzer*
> *v. Advanced Telemarketing Corp.,* 104 F.3d 761, 763-64 (5th Cir.1997)
> (single employer); *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235,
> 1241 (2d Cir.1995) (single employer). In this case, that adverse
> employment decision was Llampallas'[s] termination from her position
> as Production Supervisor at Mini-Circuits, and Palmetto had absolutely
> nothing to do *with that decision*. Palmetto had no interaction with Mini-
> Circuits employees. It made no decisions that affected the terms and
> conditions of employment at Mini-Circuits. In fact, it was completely

uninvolved in the operation of Mini-Circuits.

*Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998) (emphasis added). *Compare, Frazer v. Johnson Controls, Inc.*, CV-11-RRA-3956-W, 2012 WL 5379238 (N.D. Ala. Mar. 29, 2012) *report and recommendation adopted*, 7:11-CV-03956-RRA, 2012 WL 5379186 (N.D. Ala. Oct. 29, 2012) (distinguishing *Llampallas* on the facts before the court, and holding that joint employer could be liable because of level of control it exerted).

In the instant case, there is no evidence that Aerotek had anything to with the plaintiff's termination.  The plaintiff admits that Wells Fargo, not Aerotek, made the decision to terminate her.  (Doc. 46, p. 14.)  In his declaration, Warner states that "[s]omeone at Wells Fargo contacted Aerotek to request that Ms. McQueen be removed from her assignment at Wells Fargo because she had falsified loan documents, had low productivity, and failed to follow instructions." (Doc. 42-2, p. 3.)  Further, it is undisputed that neither Warner nor Dean had any input into Wells Fargo's decision to terminate the plaintiff's assignment.

The court has been unable to find an Eleventh Circuit case directly addressing this issue in the context of a temporary placement agency.  However, in *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1356-58 (M.D. Fla. 2003), Judge Presnell of the Middle District of Florida addressed this very issue, and said the

following regarding the termination of a temporary employee:

> The Court cannot allow a case against [the agency] to proceed based on evidence showing that [the agency] simply reported the wishes of its client, for mere conveyance does not show that [the agency] took any adverse action against Plaintiffs.

*Id.* at 1357.[13]  *See also, Neal v. Manpower Int'l, Inc.*, 3:00-CV-277-LAC, 2001 WL 1923127 (N.D. Fla. Sept. 17, 2001)  (finding that the client, not the employment agency, was responsible for the adverse employment action of removing the employee from the client's workplace, because the agency removed the employee only at the client's behest); *Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680, 686 (M.D.N.C. 1997) (finding no adverse employment action when "all that Plaintiff has alleged is that [the agency] instructed her not to return to her assignment" and did not allege that the agency discharged her). The *Watson*, *Neal*, and *Mullis* decisions are persuasive in light of the Eleventh Circuit's instructions in *Llampallas* to concentrate on the degree of control an entity has over the adverse employment decision on which the Title VII suit is based.

---

[13]This was an alternative reason for holding that the agency could not be liable.  Judge Presnell had already found that a temporary employment agency could not be considered an "employer" under Title VII because "a temporary employment agency exercising no control over Plaintiff's responsibilities or duties once on assignment, cannot be considered the Title VII employer of these temporary employees."  *Watson*, 252 F. Supp. 2d at 1356.  Judge Presnell reached this conclusion because the employees reported to the temporary employer on a regular basis, and in spite of the fact that the temporary agency paid the plaintiff.  However, in this case Aerotek does not argue that it was not the plaintiff's employer.

In this case, the evidence shows that only Wells Fargo had anything to do with the plaintiff's termination. There is no evidence that Aerotek participated in any way other than to inform the plaintiff that she could not return to Wells Fargo. For that reason, the plaintiff's termination is not an adverse employment action attributable to Aerotek. Therefore, Aerotek's motion is due to be granted as to the plaintiff's disparate treatment claims relating to the plaintiff's termination.[14]

### (2)    Mardis's Conduct

As to Mardis's conduct, even if it is properly before the court, the Eleventh Circuit requires that conduct falling short of an ultimate employment decision must, in some substantial way,

> "alter[ ] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect . . . his or her status as an employee." More particularly, when defining the level of substantiality required for a Title VII discrimination claim, we required an employee to demonstrate she suffered "a *serious and material* change in the terms, conditions, or privileges of employment" to show an adverse employment action. The "serious and material change" requirement has also been applied in this circuit to Title VII retaliation claims.

*Crawford*, 529 F.3d at 970-71 (internal citations omitted). Not all conduct which negatively affects an employee constitutes adverse employment action. *Davis v. Town*

---

[14]Similarly, the plaintiff's retaliation claims against Aerotek are also due to be dismissed.

*of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). "This limitation is consistent with the basic principle that Title VII . . . is neither a general civility code nor a statute making actionable the 'ordinary tribulations of the workplace." *Davis*, 245 F.3d at 1239 (internal quotations and citations omitted).

As set out in this court's statement of the facts, the plaintiff complains about how Mardis treated her at work. However, in her response brief, she does not discuss her allegations that Mardis: always made the plaintiff's mistakes seem like they were worse than other employees; loudly announced every time the plaintiff made a mistake while only telling Strain privately when she made one; spoke to the plaintiff in a condescending manner; acted "like [she] was retarded" if the plaintiff asked any questions; ignored the plaintiff; and gave some of the plaintiff's files to Strain, "to help her out on her production so she would look good" (doc. 42-1, pp. 22(88), 26(101). Since the plaintiff makes no attempt to argue that these are adverse employment actions, the court treats them as abandoned. *See, e.g., McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint

but not even raised as a ground for summary judgment").  Further, even if they were not abandoned, none of these acts are adverse employment actions.  There was no serious and material change in the terms of the plaintiff's employment as a result of this conduct.

What remains is Mardis's counseling the plaintiff for lack of production, being behind in her work, not performing her job correctly, and the one time she did not keep her Wells Fargo email open.  The plaintiff's brief does allege that these were adverse employment actions.  (Doc. 46, p. 21.)[15]

The Eleventh Circuit has stated:

> Given that Congress in § 2000e-2(a) has expressly limited the types of employer actions which may give rise to a Title VII discrimination claim, such a claim rarely may be predicated merely on employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions, or privileges of employment. An employee who receives criticism or a negative evaluation may lose self-esteem and conceivably may suffer a loss of prestige in the eyes of others who come to be aware of the evaluation. But the protections of Title VII simply do not extend to " 'everything that makes an employee unhappy.' " *Robinson,* 120 F.3d at 1300 (holding that oral reprimands were not actionable under Title VII's retaliation clause and adding that "[o]therwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.' ")

---

[15]The plaintiff's argument only specifically mentions counseling for being behind in her work and the email issue.  However, the court sees the other conduct (telling the plaintiff that she was behind in her work and that she was not performing her job correctly) as basically the same conduct.  In essence, Mardis was telling the plaintiff that she was not doing her job properly.

(quoting *Smart v. Ball State University,* 89 F.3d 437, 441 (7th Cir.1996)).

*Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1242 (11th Cir. 2001). In this case, the plaintiff argues that these counseling sessions were discriminatory because they were used as part of the justification for her discrimination termination. (Doc. 46, p. 21.) Under these circumstances, these events can be deemed adverse employment actions because those criticisms ultimately had a tangible impact on the terms, conditions, or privileges of her employment. Warner stated that "[s]omeone at Wells Fargo contacted Aerotek to request that Ms. McQueen be removed from her assignment at Wells Fargo because she had falsified loan documents, *had low productivity, and failed to follow instructions*." (Doc. 42-2, p. 3) (emphasis added). Accordingly, she was fired, at least in part, because of these issues. They are adverse employment actions.

As to Mardis's conduct, Aerotek did not raise, even in a footnote, the issue of whether it could be responsible for Mardis's conduct when he was not an employee of Aerotek. Again, no showing has been made that Aerotek, in any way, had control over Mardis. While not controlling, there is some authority that, under such circumstances, Aerotek could only be held responsible if it "knew or should have known of the conduct and failed to take corrective measures within its control."

*Watson*, 252 F. Supp. 2d at 1356-57.  Even if the court were persuaded by this language, in contrast to the termination issue, the record is clear that the plaintiff made some complaints to *Aerotek* employees and management about Mardis's conduct.  Because this issue was not briefed, it is unclear whether any of Mardis's conduct took place after these complaints, what control Aerotek had over the situation, and what, if anything, it could have done to remedy the problem.  *See Watson*, 252 F. Supp 2d at 1357 ("[T]he corrective measures available to [the agency] are limited, for [the agency] a private company, cannot force its client, another private company, not to discriminate or run its business in a certain manner.") (citing *Riesgo v. Heidelberg Harris, Inc.*, 36 F. Supp. 2d 53, 58 (D.N.H. 1997)).  For these reasons, the court cannot grant summary judgment to Aerotek on the issue of whether Mardis's counseling of the plaintiff regarding her job performance issues is an adverse employment action *attributable to Aerotek.*

### (3)    Lack of Comparators

Aerotek next argues that the plaintiff can show no similarly situated persons who were not black or were treated better than she.  (Doc. 40, p. 21-22.) "The plaintiff and the employee she identifies as a comparator must be similarly situated 'in all relevant respects.'  The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson*

*v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (*citing Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1259 (11th Cir. 2001)).  Further, in the case of discipline,

> [t]he Eleventh Circuit explained that " '[i]n determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.' " *Brown,* 171 F.3d at 1368 (quoting *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (1998) (quoting *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997)). " 'The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed.' " *Id.* (internal quotations and citations omitted). The Eleventh Circuit "requires that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (citation omitted).

*Humphrey v. Napolitano*, 847 F. Supp. 2d 1349, 1355-56 (S.D. Fla. 2012) *aff'd*, 12-11726, 2013 WL 1715321, — F. 3d — (11th Cir. Apr. 19, 2013).  The plaintiff's response brief does not address this argument.

The court recalls, as set out in the previous section of this Memorandum Opinion, that the plaintiff contends only that her termination and Mardis's counseling sessions with her were adverse employment actions.  Accordingly, the plaintiff must provide a similarly situated comparator who was not counseled after making the same mistakes as she, and who was not fired after committing the same alleged infraction

as she made by changing a mortgage instrument.  She does not identify *any* comparators on her race discrimination claims.[16]  For that reason alone, summary judgment is due to be granted in favor of Aerotek as to her race discrimination claims.

As to the termination, the plaintiff admitted in her deposition that she was unaware of anyone else who made the changes she did in a mortgage document and was not terminated.[17]  As to the counseling sessions, even if the court assumes that Strain is a valid comparator, although the plaintiff has not specifically identified her as such, as to her race discrimination claims, the plaintiff admits that Mardis counseled Strain for her mistakes as well.

### c.    Pretext

Aerotek does not argue pretext as to the plaintiff's disparate treatment race discrimination claim.  However, as to the plaintiff's retaliation claim, it argues that

---

[16]In her discussion of her age discrimination claims, the plaintiff identifies Strain.  (Doc. 46, p. 25.)

[17]Of course, the plaintiff states that she was only fixing a mistake that she made in the document, and that she did what she was instructed to do to correct an error.  "[I]f the employer acted on its honestly-held belief that the employee had engaged in misconduct, even if it was mistaken, there is no discrimination. *E. v. Clayton Cnty., GA*, 436 F. App'x 904, 912 (11th Cir. 2011) (citing *Elrod v. Sears, Roebuck and Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991)).  Also, "the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.,* 446 F.3d 1160, 1162 (11th Cir. 2006) (quotation omitted).  The plaintiff has not shown that, mistaken or not, the real reason for the termination was discrimination.  Further, there is no doubt that she did make some changes to the document.  She has shown no similarly situated Caucasians who made the same changes, and had the same record of counseling, and were not terminated.

the plaintiff has failed to show that its reason for removing the plaintiff from the assignment, that Wells Fargo asked it to, was pretextual.  (Doc. 40, p. 27.)  Not only has the plaintiff not attempted to show that this reason was a pretext for discrimination, she agrees that Aerotek played no part in the decision to terminate the plaintiff.  It just informed her that Wells Fargo did not want her back.  The employment agreement the plaintiff signed with Aerotek expressly stated that this was a *temporary* assignment and that "the length of the assignment is subject to the discretion and needs of [Wells Fargo]."  (Doc. 42-1, p. 59.)  The plaintiff has not shown pretext as to Aerotek.[18]  Aerotek's motion is due to be granted as to these claims as well.

### 3.   *Retaliation Claim*

The retaliation count is based upon the plaintiff being fired after she allegedly complained to Aerotek about discrimination.  The Eleventh Circuit has stated:

> Title VII also prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 2000e-3(a).  A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an

---

[18]Aerotek also argues that the plaintiff has not shown that the underlying reason for *Wells Fargo* not wanting the plaintiff to return was pretextual.  Because this was not Aerotek's reason for telling her not to return to Wells Fargo, the court will not address this argument in this section of its opinion.

activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir.2001).

*Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The defendant argues that the plaintiff cannot establish her *prima facie* case of retaliation, and that, even if she could, the plaintiff has not established that the stated reason for her termination was pretextual.

### a.   *Prima Facie* Case

Aerotek argues that the plaintiff cannot show that she engaged in statutorily protected activity, and that, even if she did, she cannot show that that activity caused her to be fired.

### (1)   Statutorily Protected Activity

The Eleventh Circuit has stated:

In order to be a statutorily protected expression, "the opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Little v. United Technologies,* 103 F.3d 956, 959 (11th Cir.1997). However, even if conduct complained about is not unlawful, a plaintiff can establish a *prima facie* case of retaliation under Title VII if he had "an objectively reasonable belief that he opposed an unlawful employment practice." 103 F.3d at 960. "A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented." *Id.* Under this analysis, it is presumed that the employee has substantive knowledge of the law.

36

*Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1388 n. 2 (11th Cir.1998).

*Padilla v. N. Broward Hosp. Dist.*, 270 F. App'x 966, 970 (11th Cir. 2008).  Aerotek contends that the plaintiff's alleged complaints were not about conduct that could objectively be considered discrimination.  The plaintiff does not respond to this specific argument, only arguing that there are "disputed issues [as to] whether Aerotek was informed of McQueen's discrimination . . . and if such views were expressed to Wells Fargo."  (Doc. 46, p. 27.)

The court will first address the "non-counseling" conduct of Mardis.  Assuming, as the court must, that the plaintiff did complain to Aerotek about everything Mardis did, no objective person could determine that Mardis's conduct was discrimination.  Again, the plaintiff complains that Mardis: made her mistakes seem like they were worse than other employees; loudly announced every time the plaintiff made a mistake while not telling Strain privately when she made one; spoke to the plaintiff in a condescending manner; acted "like [she] was retarded" if the plaintiff asked any questions; ignored the plaintiff; and gave some of the plaintiff's files to Strain "to help [Strain] out on her production so she would look good."  "Title VII . . . does not set forth a general civility code for the American workplace."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415,

165 L. Ed. 2d 345 (2006). Such things, while they may have upset the plaintiff, are not objectively discriminatory.

In the discussion, *supra*, of the plaintiff's disparate treatment claims, this court found that Mardis's counseling of the plaintiff was an adverse employment action because it ultimately was used as a basis for the plaintiff's termination. However, that does not mean that such conduct objectively amounts to *discrimination*. The plaintiff has *not* alleged that she did not make the mistakes for which she was counseled. Indeed, she has admitted that she made mistakes and was sometimes behind on her work. Further, her white co-worker, Strain, was also counseled for mistakes. Under these circumstances, an objective person could not determine that these counselings were discrimination.

Because the plaintiff has not shown that she engaged in statutorily protected activity, her *prima facie* case of retaliation against Aerotek fails.

### (2)   Causation

Additionally, because it is undisputed that Wells Fargo told Aerotek to tell the plaintiff not to return, any complaints to Aerotek by the plaintiff could not have been the cause of her alleged termination. Her *prima facie* case of retaliation against Aerotek fails for this alternative reason as well.

### b.    Pretext

As noted in the previous section, the plaintiff has failed to show that Aerotek's stated reason for removing the plaintiff from the assignment, specifically, that Wells Fargo asked it to, was pretextual.  For this reason as well, the plaintiff's claim against Aerotek for retaliation fails.

### B.    <u>Wells Fargo's Motion for Summary Judgment</u>

As to Wells Fargo, the complaint alleges disparate treatment race discrimination in violation of both Title VII and 42 U.S.C. § 1981.  It also alleges discrimination on the basis of age in violation of the ADEA and the AADEA. Finally, the complaint alleges that Wells Fargo retaliated against the plaintiff in violation of 42 U.S.C. § 1981.  Wells Fargo moves to for judgment of dismissal of all of these claims.  Each claim will be addressed in turn.[19]

### 1.    *"Employer"*

Wells Fargo first argues that it was not the plaintiff's "employer" under Title VII, the ADEA, or the AADEA.  All of these statutes require that Wells Fargo be the plaintiff's "employer" for liability to attach.  *See Reeves v. DSI Sec. Servs.*, 331 F. App'x 659, 661 (11th Cir. 2009) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 104

---

[19]Again, to the extent that the plaintiff's *race* discrimination claim is based upon conduct other than the plaintiff's termination, it is due to be dismissed since that conduct was not identified as a claim in the complaint.

S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); 42 U.S.C. § 2000e-2)("The establishment of an employment relationship is required to obtain relief pursuant to Title VII."); *Fountain v. Metcalf, Zima & Co., P.A.*, 925 F.2d 1398, 1401 (11th Cir. 1991) (plaintiff must be employee to sue under the ADEA); 29 U.S.C. § 621-634; Ala. Code § 25-1-21 ("No *employer*, employment agency, or labor organization shall discriminate in employment against a worker 40 years of age and over in hiring, job retention, compensation, or other terms or conditions of employment") (emphasis added).

Again, the plaintiff claims that Wells Fargo and Aerotek were her "joint employers."  (Doc. 25, p. 4.)  Wells Fargo disputes this, writing:

> In this case, there is simply no factual basis for finding that an employment or contractual relationship existed between Plaintiff and Wells Fargo:
>
> 1.   Plaintiff entered into an employment agreement with Aerotek acknowledging that she was "not an employee of the client";
> 2.   Plaintiff never applied for employment with Wells Fargo;
> 3.   Wells Fargo never considered Plaintiff for employment;
> 4.   Wells Fargo never employed Plaintiff or entered into an employment contract with her;
> 5.   Plaintiff never received wages or benefits from Wells Fargo;
> 6.   Wells Fargo never made any employment decisions regarding Plaintiff (such as decisions relating to compensation, promotion, demotion, or termination from Aerotek);
> 7.   Wells Fargo maintained no records relating to Plaintiff;
> 8.   Plaintiff knew that issues related to her employment had to be reported to Aerotek, not Wells Fargo;
> 9.   Plaintiff did not report any work-related issues to anyone at Wells Fargo;

10.    Plaintiff was paid by Aerotek, and had to pick up her paycheck from an Aerotek employee;

11.    Plaintiff filed for unemployment benefits after she was terminated and claimed Aerotek, not Wells Fargo, was her employer.

Plaintiff admits all of her discussions about her employment were with either Warner, Dean or an Aerotek representative. Notably, it is Aerotek that had the sole right to hire, fire, reassign/transfer, discipline, and pay Plaintiff. In short, all relevant decisions relating to Plaintiff's employment were undisputedly made by her employer – Aerotek.

(Doc. 43, p. 13)(internal citations omitted).

While a direct employment relationship is the usual method by which liability

is imposed upon an employer,

> courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an "employer" . . . . In one approach, courts examine whether two entities are so interrelated that they may be considered a "single employer" or an "integrated enterprise." . . . In another approach, courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a "joint employer" of those employees. . . . A third approach examines whether the person or entity that took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer.

*Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992-93 (6th Cir. 1997)

(citations omitted).[20]

---

[20]In *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1245 (11th Cir. 1998), the Eleventh Circuit cited to *Swallows* approvingly as "explaining the differences between the joint employer theory and the single employer theory."

The Eleventh Circuit has held that the basis for finding a joint employer relationship is "'simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Virgo v. Riviera Beach Associates, Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994) *quoting National Labor Relations Board v. Browning-Ferris Industries*, 691 F.2d 1117, 1122 (3d Cir.1982)). The Eleventh Circuit has more recently stated:

> [G]enerally, this circuit has adopted the "economic realities" test to determine whether a Title VII[21] plaintiff is an employee. *See Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 340-41 (11th Cir.1982). Under this test, the term "employee" is "construed in light of general common law concepts" and "should take into account the economic realities of the situation," "viewed in light of the common law principles of agency and the right of the employer to control the employee." *Id.* Specifically, the

---

[21]"In interpreting ADEA's definition of 'employer,' Title VII cases are helpful." *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1263 (11th Cir. 1997). "Title VII, the ADA, and the Age Discrimination in Employment Act all have similar definitions of 'employer' and '[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably.'" *Dearth v. Collins*, 441 F.3d 931, 934 (11th Cir. 2006) (quoting *AIC v. Security Investigations*, 55 F. 3d 1276, 1279-80 (7th Cir. 1995)). Further, "[i]n *Robinson [v. Alabama Cent. Credit Union*, 964 So. 2d 1225 (Ala. 2007), the Alabama Supreme Court], after considering the holdings of federal courts in Alabama, adopted the same burden-shifting analysis applied to federal age-discrimination claims brought under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. *Robinson,* 964 So.2d at 1228-29." *Lambert v. Mazer Disc. Home Centers, Inc.*, 33 So. 3d 18, 23 (Ala. Civ. App. 2009). *See also, Bonham v. Regions Mortgage, Inc.*, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001) ("[B]ecause it is self-evident that the AADEA's purpose and prohibition are like the ADEA's, to promote employment of older persons based on their ability rather than age and to prohibit arbitrary age discrimination in employment, it follows that these principles should govern in AADEA cases as well."). The court will refer to Title VII cases for their definition of employer for both plaintiff's ADEA and AADEA claims.

> court should consider factors such as whether the defendant directed the
> plaintiff's work and provided or paid for the materials used in the
> plaintiff's work. *Id.* at 341.

*Cuddeback v. Florida Bd. of Educ.*, 381 F.3d 1230, 1234 (11th Cir. 2004).  When

discrimination is based on an adverse employment decision, the Eleventh Circuit,

citing to *Virgo*, held that the joint employer theory "concentrate[s] on the degree of

control an entity has over the adverse employment decision on which the Title VII

suit is based."  *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th

Cir. 1998).  *See also, Clark v. St. Joseph/Candler Health Sys.*, 225 F. App'x 799, 800

(11th Cir. 2007) (citing *Virgo* and noting that the test for joint employer status is

whether the non-direct employer retained sufficient control over the terms and

conditions of the employee's employment such that it and the direct employer were

joint employers of the employee).

    In light of this case law, it is clear that, at least as to the termination, Wells

Fargo was the plaintiff's employer.  The employment contract states that Wells Fargo

would determine how long the plaintiff could remain there.  Further, it is undisputed

that the plaintiff left Wells Fargo only after Wells Fargo informed Aerotek that it did

not want her to return.

    Further, even as to Mardis's conduct, Wells Fargo was the plaintiff's employer.

It is also undisputed that the plaintiff worked at Wells Fargo's facility, that Wells

Fargo directed the plaintiff's work while she was there, that Wells Fargo approved the hours the plaintiff worked, and that Wells Fargo provided and paid for the materials used in the plaintiff's work.  Wells Fargo's motion fails in this regard.

### 2.   *Age Discrimination Under the ADEA and the AADEA*

Wells Fargo next argues that the Age Discrimination claim against it must fail. It contends first that the plaintiff may not make a "mixed-motive" claim of age discrimination under the ADEA.  Next, it argues that the plaintiff cannot establish her *prima facie* case of age discrimination.  Finally, it argues that, even if the plaintiff establishes her *prima facie* case, she has failed to show that the Wells Fargo's stated reasons for its conduct are a mere pretext for discrimination.

### a.   **"Mixed-Motive" Cases Under the ADEA**

Due to a fairly recent Supreme Court decision dealing with the burden or persuasion in ADEA cases, the Eleventh Circuit has recently set out the following framework within which ADEA claims should be evaluated in a summary judgment context:

> The ADEA prohibits employers from discharging an employee who is at least 40 years of age because of that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). The  ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Id.* §

623(a)(1). In *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 176, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009), the Supreme Court held that the language "because of" in the ADEA statute means that a plaintiff must prove that discrimination was the "but-for" cause of the adverse employment action. *See id.* ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."); *see also id.* (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decision-making] process *and had a determinative influence on the outcome*") (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993)); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Law of Torts* 265 (5th ed. 1984) ("An act or omission is not regarded as a cause of an event if the particular event would have occurred without it.").

A plaintiff can establish age discrimination through either direct or circumstantial evidence. *Mora v. Jackson Mem'l Found., Inc.,* 597 F.3d 1201, 1204 (11th Cir.2010). Prior to *Gross,* we consistently evaluated ADEA claims based on circumstantial evidence of discrimination under the burden-shifting framework in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir.2000) (en banc). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* at 1024. Next, the defendant must articulate a legitimate, non-discriminatory reason for the challenged employment action. *Id.* If the defendant articulates one or more such reasons, the plaintiff is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination. *See Kragor v. Takeda Pharm. Am., Inc.,* 702 F.3d 1304, 1307, No. 11–16052, 2012 WL 6618360, at *2 (11th Cir. Dec. 20, 2012) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825). The burden of persuasion always remains on the plaintiff in an ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the "but-for" cause of the adverse employment action. *See Gross,* 557 U.S. at 176,

129 S.Ct. at 2350.

Following *Gross,* we have continued to evaluate ADEA claims based on circumstantial evidence under the *McDonnell Douglas* framework. *See Kragor,* 702 F.3d at 1308, 2012 WL 6618360, at *2. This is not only consistent with our pre-*Gross* case law, but also it is entirely consistent with *Gross,* which expressly left open the question of whether this application is appropriate. *Gross,* 557 U.S. at 175 n. 2, 129 S.Ct. at 2349 n. 2 ("[T]he Court has not definitively decided whether the evidentiary framework of [*McDonnell Douglas*] utilized in Title VII cases is appropriate in the ADEA context."). *Gross* held that it is improper to shift the burden of *persuasion* to the defendant in an age-discrimination case. *Id.* at 173, 129 S.Ct. at 2348 ("[W]e must first determine whether the burden of persuasion ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA. We hold that it does not." (footnote omitted)). But the *McDonnell Douglas* framework does not shift the burden of persuasion to the defendant; instead, once the employee establishes a prima facie case of discrimination, the burden of *production* is shifted to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Tex. Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). If the employer offers a legitimate, non-discriminatory reason, the employee is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination. *See id.* at 256, 101 S.Ct. at 1095; *see also Kragor,* 702 F.3d at 1308, 2012 WL 6618360, at *2. Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) ("It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against remains at all times with the plaintiff.' ") (citation omitted); *see also Willis v. Conopco, Inc.,* 108 F.3d 282, 286 (11th Cir.1997).

Our continued application of the *McDonnell Douglas* framework

46

in ADEA cases is also consistent with all of our sister circuits that have addressed the issue. *See Fleishman v. Cont'l Cas. Co.,* 698 F.3d 598, 604 (7th Cir.2012) (citing *Senske v. Sybase,* 588 F.3d 501, 506–07 (7th Cir.2009)); *Shelley v. Geren,* 666 F.3d 599, 607 (9th Cir.2012); *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106 (2d Cir.2010); *Jackson v. Cal–Western Packaging Corp.,* 602 F.3d 374, 378 (5th Cir.2010); *Jones v. Okla. City Pub. Sch.,* 617 F.3d 1273, 1278 (10th Cir.2010); *Geiger v. Tower Auto.,* 579 F.3d 614, 622 (6th Cir.2009); *Smith v. City of Allentown,* 589 F.3d 684, 690–91 (3d Cir.2009); *Velez v. Thermo King de Puerto Rico, Inc.,* 585 F.3d 441, 446–47 (1st Cir.2009); *see also Gibson v. Am. Greetings Corp.,* 670 F.3d 844, 855 (8th Cir.2012) (continuing to apply *McDonnell Douglas* to ADEA cases without discussion of *Gross*), *cert. denied,* —— U.S. ——, 133 S.Ct. 313, 184 L.Ed.2d 154 (2012).

Although our *Kragor* decision and our holding today reaffirm the use of the *McDonnell Douglas* framework in ADEA cases, this framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case. *See Smith v. Lockheed Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir.2011). Instead, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* A triable issue of fact exists "if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (footnote omitted) (internal quotation marks omitted).

*Sims v. MVM, Inc.*, 704 F.3d 1327, 1331-33 (11th Cir. 2013).

The defendant argues that, since the plaintiff alleges that the discrimination was based upon both age *and* race, the case is due to be dismissed.  (Doc. 43, p. 16.) It cites the following portion from *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 2352, 174 L. Ed. 2d 119 (2009), where the court held that

> a plaintiff bringing a disparate-treatment claim pursuant to the ADEA
> must prove, by a preponderance of the evidence, that age was the "but-
> for" cause of the challenged adverse employment action. The burden of
> persuasion does not shift to the employer to show that it would have
> taken the action regardless of age, even when a plaintiff has produced
> some evidence that age was one motivating factor in that decision.

*Gross*, 557 U.S. at 180.  It also cites to *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010), where the Eleventh Circuit, citing *Gross*, wrote: "Because an ADEA plaintiff must establish 'but for' causality, no 'same decision' affirmative defense can exist: the employer either acted 'because of' the plaintiff's age or it did not." *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010).  Wells Fargo then states that "[b]ecause this is precisely the type of mixed-motive claim prohibited by *Gross*, [p]laintiff's age discrimination claims should be dismissed."  (Doc. 43, p. 16.)  However, the defendant cites no authority for the proposition that the plaintiff cannot allege that race and age *both* caused the discrimination at issue.  Nor does this court hold that the Supreme Court's decision in *Gross* should be read so restrictively.

Judge Walker in the Middle District of Alabama recently addressed a similar issue, writing:

> The "but for" causation standard of the ADEA does not require that a plaintiff prove that his age was the sole factor motivating the challenged employment action. *See Jones v. Oklahoma City Public Schools,* 617 F.3d 1273, 1277–78 (10th Cir.2010)("[A]n employer may

48

be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as 'age was the factor that made a difference.' *Gross* does not hold otherwise.")(internal citations omitted); *see also* [*Archie v. Home-Towne Suites, LLC*, 749 F. Supp. 2d 1308, 1315 n. 4 (M.D. Ala. 2010)]. In *Archie,* the court was faced with the issue of whether, after *Gross,* a plaintiff could prosecute both a Title VII gender claim and an ADEA age discrimination arising from the same adverse employment actions. The court declined to require the plaintiff to elect between the two claims, reasoning as follows:

> [G]ross requires "but for" causation. It has long been the law that there is a difference between "but for" causation and "sole" causation. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)(distinguishing sole causation from but for causation); *see also McNely v. Ocala Star–Banner Corp.,* 99 F.3d 1068, 1076 (11th Cir.1996)(same). *Gross* refers only to "but for" causation. *Gross,* 129 S.Ct. at 2350.

> It appears to the court, therefore, that even after *Gross,* a plaintiff might prove that gender discrimination was a substantial or motivating factor in an adverse employment action, satisfying the standard for the Title VII claim, but also show that if it had not been for her age, she would not have been terminated, satisfying the ADEA standard[.]

*Archie,* 749 F.Supp.2d at 1315 n. 4.

*Ross v. Renaissance Montgomery Hotel & Spa at the Convention Ctr*., 2:11CV301-MEF, 2012 WL 1030323 *4-5 (M.D. Ala. Feb. 27, 2012) *report and recommendation adopted as modified*, 2:11-CV-301-MEF, 2012 WL 1032618 (M.D. Ala. Mar. 27, 2012); *accord Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123

L.Ed.2d 338 (1993) (requiring an ADEA plaintiff to show that age had a "determinative influence on the outcome" of her employer's decision-making process).

Of course, *Hazen* (cited for this point with approval in *Gross*, 129 S. Ct. at 2345) is binding upon this court.  The court further finds Judge Walker's opinion, and the *Archie* case cited therein, persuasive and holds that, under the ADEA, the plaintiff can allege that the alleged discriminatory acts were committed *both* because of her age and race.  Consequently, Wells Fargo's motion fails in this regard.

### b.   *Prima Facie* Case

Wells Fargo argues that the plaintiff has not proven a *prima facie* case of age discrimination.  To establish a *prima facie* case under the ADEA and the AADEA, the plaintiff must show that:

> (1) she is a member of the protected group of persons over age forty; (2) she suffered an adverse employment action, *e.g.* a discharge, demotion, or failure to hire; (3) she was replaced by a person outside the protected group, or at least by a substantially younger person (or was rejected for a position in favor of the younger person); and (4) she was qualified for the job at issue.

*Alexander-Igbani v. Dekalb Cnty. Sch. Dist.*, 1:11-CV-4535-AT-JSA, 2013 WL 2897251 (N.D. Ga. June 13, 2013) (citing *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir. 1998)).

### (1)     Adverse Employment Actions

Wells Fargo states that Mardis's conduct cannot be considered an adverse employment action.  This court has already determined that, except for the counseling sessions, this is correct.  Therefore, Wells Fargo's motion is due to be granted as to all of Mardis's conduct complained of in the complaint other than his conduct relating to the counseling sessions.

### (2)     Lack of Comparators

It has been noted that "[t]he *gravamen* of a discrimination case requires a plaintiff to show that a similarly situated employee outside of plaintiff's protected class was treated more favorably."  *Marcelin v. Eckerd Corp. of Florida, Inc.*, 8:04-CV-491-T-17MAP, 2006 WL 923745 *5 (M.D. Fla. Apr. 10, 2006) (*citing e.g., Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1313 (11th Cir.1998), *superseded in part by* 151 F.3d 1321 (11th Cir. 1998)).   Where the plaintiff fails to provide evidence of a comparator, his claim fails.   *See e.g., Connor v. Bell Microproducts-Future Tech, Inc.*, 492 F. App'x 963, 966 (11th Cir. 2012) (plaintiff failed to establish a *prima facie* case of race or age discrimination, when he did not establish a similarly-situated comparator).

The plaintiff identifies Strain as her comparator for her age discrimination claims.  At the time of her termination, the plaintiff was age 62.  (Doc. 25, p. 2.)  It

is undisputed that Strain was 50 years old at the time of the events alleged in the complaint.  (Doc. 43, p. 7; doc. 46, p. 4.)  The Eleventh Circuit has held that an age difference as little as 3 years is "substantially younger."  *See Carter v. Decision One Corp. Through CT Corp.*, 122 F. 3d 997 (11th Cir. 1997) (explaining that the Eleventh Circuit has found a three-year age difference to be "legally significant for ADEA purposes"); *see also Carter v. City of Miami*, 870 F.2d 578, 582-83 (11th Cir. 1989) (finding that a *prima facie* ADEA case was established when a 49-year-old plaintiff was replaced by a 46-year-old woman).  Strain was twelve years younger than the plaintiff and held the same position and performed the same duties that the plaintiff held and did.  Thus, to the extent that Wells Fargo's motion is based on plaintiff's identified comparator being within the same protected age group as the plaintiff, the motion fails.[22]

Still, as also argued by Wells Fargo, the plaintiff has made no attempt to show

---

[22]This argument was made in Wells Fargo's reply brief at footnote 7.  (Doc. 50, p. 6, n. 7.)  In that note, the defendant cites to *Bell v. Capital Veneer Works*, No. 06-12253, 2007 WL 245875 (11th Cir. Jan. 30, 2007) for the proposition that "the fact that her comparator is over 50 prevents her from being classified as a proper comparator."  As an unpublished opinion, *Bell* can only be cited as persuasive authority.  11th Cir. R. 36-2.  The court does not find *Bell* to be persuasive as the Eleventh Circuit did not address the comparator element of a *prima facie* case of age discrimination in reaching its decision.  It spoke to this issue only in *dicta* in footnote 7 of its opinion writing: "Even if we reviewed Bell's age discrimination claim under the prima facie case used for race and sex discrimination claims, Bell still has not satisfied her burden of establishing a prima facie case because . . . she has not demonstrated that Capital Veneer treated a similarly-situated employee who was younger than 40 years old more favorably than the company treated her." *Bell*, 2007 WL 245875 at *2, n. 7.

that Strain is "similarly situated in all relevant respects" to the plaintiff.  Even assuming that she was similarly situated, as explained *supra* in the discussion of Aerotek's motion, the plaintiff admits that Mardis counseled Strain for her mistakes as well.  Further, there is no evidence that Strain made the same type of change to a mortgage and was not fired.  The plaintiff has failed to provide evidence of any similarly situated employee who was treated differently.  Thus, Wells Fargo's motion is due to be granted as to the age discrimination claims on this alternative basis.

### c.    Pretext

Finally, Wells Fargo argues that the plaintiff has failed to show that its reason for not wanting her to return was actually a pretext for discrimination.  To establish pretext, the plaintiff has to demonstrate that the proffered reason for the actions taken against her was not the true reason for the employment decision.   "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) quoting *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005).  She could do the latter by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. *Id.*  Thus,

> "to avoid summary judgment [the plaintiff] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1228 (11th Cir.1993) (citation omitted).   A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

*Brooks*, 446 F.3d at 1162-63.

As noted *supra* in the discussion of Aerotek's motion, the only adverse employment actions which the plaintiff identified are her termination and Mardis's publicly counseling her for lack of production, being behind in her work, not performing her job correctly, and the one time she did not keep her Wells Fargo email open.  (Doc. 46, p. 21.)

Wells Fargo states that the counselings did not occur because of the plaintiff's age or race, but occurred because the plaintiff actually had these performance issues. The plaintiff makes no attempt in her response to rebut this reason. Accordingly, to the extent the plaintiff's age claims are based upon the conduct of Mardis, they must fail.[23]

---

[23]The plaintiff also does *not* claim that she did not do the things for which she was counseled.  She admits that she made some mistakes while she worked at Wells Fargo, but that her mistakes "[were] not any worse than anybody else."  (Doc. 77, p. 20(77).)  She also states that she "might have got[ten] one or two loans behind every now and then, but I quickly caught up."  (Doc. 42-1, p. 23(90).)  She testified that Mardis counseled her "one time" because she did not keep her Wells Fargo email open, which was the way supervisors communicated with her about her work.  (Doc. 42-1, p. 49(194).)

Wells Fargo states that it asked Aerotek not to have the plaintiff return to work because the plaintiff

> was counseled for slow work, for making mistakes on loan files and because she refused to keep her email open to communicate with her supervisor about her work.  Plaintiff then, in violation of Wells Fargo policy, changed a loan file after it was denied by second level review to correct actions she took in response to her belief her recommendation was approved.

(Doc. 43, p. 24.)  The plaintiff attacks this reason only by arguing that the defendants have offered "inconsistent post-hoc explanations for [the] decision." (Doc. 46, p. 22.) Specifically, she notes that Warner stated in his declaration that "[s]omeone at Wells Fargo contacted Aerotek to request that Ms. McQueen be removed from her assignment at Wells Fargo because she had falsified loan documents, had low productivity, and failed to follow instructions." (Doc. 42-2, p. 3.)  She compares that statement to Mardis's declaration, where he calls what the plaintiff did a "mistake," and states that he is unaware of anyone else who has made that same mistake who was not released.  (Doc. 42-5, p. 6.)  Lastly, the plaintiff notes that, in a response to the Alabama Department of Industrial Relations's request for information, provided by an agent of Aerotek, Aerotek stated that the plaintiff "was discharged for misconduct related to performance.  The claimant made a mistake and instead of asking how to fix the mistake she tried to do it herself which involved forging a

mortgage document." (Doc. 47-1, p. 11.)

In *Phillips v. Aaron Rents, Inc.*, 262 F. App'x 202, 210 (11th Cir. 2008) the Eleventh Circuit noted that there was a different between *additional* and *inconsistent* reasons for termination. The court wrote:

> Evidence that an employer had additional reasons for terminating an employee, even if those reasons were undisclosed, does not prove pretext. *See Tidwell v. Carter Prods.,* 135 F.3d 1422, 1428 (11th Cir.1998). If an employer offers different reasons for terminating an employee, those reasons must be *fundamentally inconsistent* in order to constitute evidence of pretext.

*Phillips v. Aaron Rents, Inc.*, 262 Fed. App'x 202, 210 (11th Cir. 2008) (emphasis added). The reasons given by the defendants are not fundamentally inconsistent with each other. While sometimes they may have referred to the modification of the loan document as a mistake, other times as falsification, and still other times as forgery, there is no evidence, as the plaintiff suggests, that calling it "fraud" or "falsifying" or "mistake" made a difference. The reasons for her termination are that she was not doing the job the way Wells Fargo expected, and that she *changed* the mortgage document. None of the defendants' explanations is inconsistent with these reasons. The plaintiff has failed to show pretext. Accordingly, Wells Fargo's motion is due to be granted as to the plaintiff's age discrimination claims.

### 3.   *Race Discrimination Under Title VII and 42 U.S.C. § 1981*

The only difference between this claim and the disparate treatment claim made against Aerotek, is that, as against Wells Fargo, the claim is also made under Title VII, whereas it was made against Aerotek only under 42 U.S.C. § 1981.  "The same analysis applies to claims for employment discrimination brought under Title VII as to those brought under § 1981."  *Phillips v. Aaron Rents, Inc.*, 262 Fed.Appx. 202, 207 (11th Cir. 2008).   Accordingly, the analysis is the same and the disparate treatment claims against Wells Fargo fail, as they did against Aerotek, because, as to the only adverse employment actions the court has found, the counseling sessions and the termination, the plaintiff has no evidence of any comparators.  The claim also fails because the plaintiff has not shown that the reasons that Wells Fargo gave for these actions are a pretext for discrimination.

### 4.   *Retaliation Claim*

As shown in the discussion of the retaliation portion of Aerotek's motion, the plaintiff's retaliation claim against Wells Fargo fails because the plaintiff cannot show that she engaged in statutorily protected activity.

Wells Fargo also argues that the causation element is not met because there is no evidence that the plaintiff ever complained to anyone at Wells Fargo about any alleged discrimination.  In her response brief, the plaintiff only states that "[t]here is

57

a disputed issue of fact [as to] whether Aerotek was informed of McQueen's discrimination complaint and if such views were expressed to Wells Fargo." (Doc. 46, p. 27.) The plaintiff is incorrect. She has only produced *evidence* that she spoke to *Aerotek* employees about the conduct. In her deposition, the plaintiff stated that *she did not know* whether anyone at *Wells Fargo* had any knowledge of the complaints. (Doc. 42-1, p. 25.) The plaintiff admits that neither Dean nor Warner reported any such complaint to Wells Fargo. (Doc. 40, p. 14; doc. 46, p. 3.) She also admits that Aerotek did not inform anyone at Wells Fargo about the plaintiff's complaint. (Doc. 43, p. 11; doc. 46, p. 4.)

> The Eleventh Circuit has held:
>
> "To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta,* 212 F.3d at 590 (citation and internal marks omitted); *see also Raney v. Vinson Guard Service, Inc.,* 120 F.3d 1192, 1197 (11th Cir.1997) ("a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action").

*Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001) (overruled on other grounds). Absent evidence that anyone at Wells Fargo knew about the alleged protected conduct, the retaliation claim fails as to this defendant.

IV.    **CONCLUSION**

Based on the foregoing, the court finds that there is no genuine issue of material fact and that the movants are entitled to judgment as a matter of law on all of the claims against them.    Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that the motions for summary judgment are hereby **GRANTED**, and this case is **DISMISSED**, with prejudice, costs taxed as paid.

**DONE** and **ORDERED** this 28th day of June, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge